**Deliy Pereira DA SILVA, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 09–1831.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 20, 2010.

Opinion filed: Feb. 17, 2010.

---

John D. Perez, Esq., Perez, Perez & Perez, Newark, NJ, for Petitioner.

Steven F. Day, Esq., Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Justin R. Markel, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges.

## OPINION

PER CURIAM.

Deliy Pereira Da Silva petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the reasons that follow, we will deny the petition.

### I.

Da Silva, a native and citizen of Brazil, entered the United States in June 2005. She was eventually placed in removal proceedings for having entered the United States without being admitted or paroled. She conceded removability and, in 2007, applied for withholding of removal and relief under the Convention Against Torture ("CAT"). In support of her application, she argued that she feared returning to Brazil because of persecution she had suffered on account of her involvement in a local political campaign.

In an August 2007 hearing before the Immigration Judge ("IJ"), Da Silva testified that, for approximately six months in 2004, she worked as a canvasser for a politician who was running for city council. Da Silva explained that, in November 2004 (around the time of that election), she received threatening phone calls from an unidentified individual, telling her to stop supporting the politician. In May 2005, after the politician had won the election, Da Silva returned home from church to find her house ransacked. One of the walls had writing on it that said "we told you this would happen." Although Da Silva contacted the police, who filed a report of the incident, she was unable to name any possible suspects. Shortly thereafter, she came to the United States.

The IJ concluded that Da Silva's testimony lacked credibility, highlighting several inconsistencies amongst Da Silva's testimony, her application, and materials in the record. In light of these inconsistencies, as well as the country conditions in Brazil, the IJ concluded that Da Silva had failed to demonstrate entitlement to withholding of removal. The IJ also denied her request for CAT relief, concluding that her claims were not credible and that she had failed to provide additional evidence indicating that she would likely be tortured if removed to Brazil. On appeal, the BIA held that the IJ's adverse credibility determination was not clearly erroneous. In doing so, the BIA reiterated some of the inconsistencies cited by the IJ and highlighted two additional points: (1) Da Silva

was not sure who made the threatening phone calls or vandalized her house; and (2) her children and mother continued to live in Brazil without adverse consequences. The BIA also concluded that, in light of the adverse credibility determination, Da Silva could not prevail on her CAT claim. Da Silva now seeks review of the BIA's decision.

## II.

We have jurisdiction over Da Silva's petition pursuant to 8 U.S.C. § 1252(a)(1). We review an adverse credibility determination for substantial evidence. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir.2003). Under this deferential standard of review, we must uphold this finding "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001).

The IJ articulated several reasons for concluding that Da Silva lacked credibility. First, Da Silva's testimony and the police report indicated that her house was vandalized in May 2005, whereas her application stated that the incident occurred in March 2005. Second, although her testimony and the police report indicated that her house was merely ransacked,[1] she submitted photographs indicating that her house was reduced to rubble. Third, the

police report did not mention anything about the alleged writing on her wall, nor did she submit any photographs of this writing. Finally, although the politician submitted a letter confirming Da Silva's involvement in his campaign, he did not mention anything about the threatening phone calls she allegedly received or the alleged damage to her house—incidents of which he was apparently aware.[2]

Although Da Silva's brief attempts to explain the inconsistency concerning the date her house was allegedly ransacked, the brief makes no attempt to reconcile the other inconsistencies. Moreover, we are not persuaded by her attempts at the hearing to neutralize these inconsistencies. As such, we conclude that the substantial evidence supports the IJ's adverse credibility determination.[3]

In light of this adverse credibility finding, the BIA did not err in upholding the IJ's denial of Da Silva's withholding of removal claim. Moreover, Da Silva has failed to show that she would likely be tortured if removed to Brazil. *See* 8 C.F.R. § 208.16(c)(2). Her remaining arguments are without merit.[4] Accordingly, we will deny the petition.

---

1. The police report stated that "a[n] unknown person burglarized her residence and stolen [sic] the following objects: [o]ne iron door and one iron window, and other objects of domestic use." (Admin. Rec. at 149.)

2. Da Silva testified that she had informed the politician of these incidents. (*See* Admin. Rec. at 130–31.)

3. The REAL ID Act governs this case, as Da Silva filed her application after the statute's enactment. Before the Act's enactment, "discrepancies in a petitioner's testimony [had to] involve the 'heart of the asylum claim' in order to support an adverse credibility finding." *Kaita v. Att'y Gen. of the U.S.*, 522 F.3d

288, 296 (3d Cir.2008). Under the Act, however, inconsistencies underlying an adverse credibility determination need not go to the heart of the alien's claim. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). We need not consider the impact of this statute, for the inconsistencies here go to the heart of Da Silva's claim and thus would support an adverse credibility determination even under the pre-REAL ID Act standard.

4. Much of Da Silva's counseled brief is devoted to a discussion of law that is, at most, only tangential to the issues in this case. We note that several lengthy passages from the brief can be found, verbatim, in other briefs her

counsel has recently submitted to our court. We trust that, going forward, counsel's filings will be better tailored to the case in question.